IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN HEBERT | : | |
| | : | |
| v. | : | Civil No. CCB-05-2283 |
| | : | |
| AAI UIC RETIREMENT PLAN | : | |

**MEMORANDUM**

Now pending before the court is defendant's motion to dismiss or, in the alternative, for summary judgment. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, the defendant's motion for summary judgment will be granted.

**BACKGROUND**

Plaintiff John Hebert ("Hebert") retired from his executive position at the AAI Corporation on or around December 1, 1994 and began receiving monthly pension payments of $6,869 from the AAI UIC Retirement Plan ("AAI") later that same month. Upon receipt of his initial pension check in December of 1994, Hebert was aware that the monthly benefit was lower than the original estimate of $7,055 given to him by the Director of Human Resources at AAI Corporation. (*See* Plf's Response in Opposition, Page 2-3; Exhibit 1, 1994 Computation)[1] Hebert admits that he did not consider the discrepancy to be significant at the time, assumed that it was an honest mistake, and did nothing to challenge the benefit amount.[2] (*See* Plf's Response in Opposition, Page 2-3) Eight years later, in

---

[1] It appears that Hebert also was aware of the specific formula for calculating benefits and perhaps even the recent statutory changes to the amount of compensation ERISA plans could count in calculating benefits. (*See* Plf's Response to Mot. to Dismiss at Page 3).

[2] Hebert notes that he believed the $7,055 estimate was actually $13 higher than it was supposed to be.

1

September of 2002, however, Hebert again came across documentation of the $7,055 estimate, prompting him to request further detailed supporting documentation from AAI. Hebert states it was at this time that he first learned how AAI calculated his $6,869 benefit amount.

Specifically, on or about September 11, 2002, Hebert learned about AAI's selection of Option One under Internal Revenue Service Revenue Procedure 93-14 ("RP 93-14") for computing benefits pursuant to statutory compensation limits. (*See* Plf's Response in Opposition, Page 3-4; Exhibit 4)[3] It is the selection of Option One which Hebert challenges as being in violation of the terms of the defendant retirement plan ("the Plan"). As further explained below, Hebert argues that use of Option One caused his 11 months of service in 1994 to be disregarded, in turn resulting in his monthly benefit being less than that to which he was entitled.[4]

AAI does not contest that it used Option One. Nor does AAI contest that under a proper application of Option One, the first required calculation, which applies the old $200,000 limits,

---

[3] The Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, amended section 401(a)(17) of the Internal Revenue Code to limit compensation taken into account under an ERISA plan in any year to $150,000, as adjusted for increases in the cost of living. Prior to this change, compensation taken into account was capped at $200,000. RP 93-14, which interprets these changes to the Internal Revenue Code, clarifies that annual compensation to be taken into account in calculating pension benefits is to be capped at $200,000 for plan years prior to 1994 and at $150,000 for plan years after 1993. These limits are substantially tracked under Article II, 2.1(n) of the Plan. (*See* Def's Motion to Dismiss, Exhibit 1, "the Plan") RP 93-14 also provides model options for calculating benefits for retirees whose service started before, and continued into or beyond, 1994. None of these options are specifically identified in the Plan.

[4] The following explains how Option One was applied to Hebert's situation: under Option One, AAI first calculated what his benefit would be by considering only pre-1994 compensation (excluding the 11 months in 1994), but applying the more generous $200,000 cap. The resulting benefit amount was the "minimum protected benefit" under RP 93-14 and the Plan. Correctly following the next step, AAI calculated Hebert's benefit by taking into account his total compensation, including the 11 months in 1994, but applied the new $150,000 cap. This second calculation resulted in a lower benefit than the first. AAI, therefore, used the first calculation to determine Hebert's benefit, as it was the greater of the two.

2

dictates that post-1993 compensation be "excluded." Similarly, Hebert does not charge that AAI misapplied Option One, or deny that the Plan grants substantial discretion to the administrators. Rather, Hebert charges that the Plan administrators could not use that discretion to select Option One, because it resulted in a benefit amount contrary to the Plan and since the Plan was never amended accordingly.[5] AAI contends that selection of any of the options was fully within its administrators' discretion and that nothing in the Plan limits that discretion or is contrary to the result here.[6]

## ANALYSIS

*Count I - Use of 93-14's Option One*

Hebert brings Count I under the civil enforcement provision of ERISA, 29 U.S.C. § 1132.[7] When a plan by its terms confers discretion on the plan's administrator to interpret its provisions

---

[5] Essentially, Hebert's argument in his Complaint was that language in the Plan defining years of service, which dictates that "in the case of any Employee who is not employed for an entire year, his compensation [taken into account] for such year shall be the amounts actually received in that year" (*See* Def's Motion to Dismiss, Exhibit 1, "the Plan" at §§ 4.5(a) and (b)), along with the Plan's lack of provisions for excluding any post-1993 compensation in general, precludes the use of Option One and restricts the administrators to choosing RP 93-14's Option Three. Option Three dictates that the accrued benefit must be the greater of: the benefit if the employee's total compensation, including compensation after 1993, but applying the $150,000 caps, is taken into account OR *the sum of* what the benefit would be by considering only pre-1994 compensation (excluding the 11 months in 1994 in Hebert's case), but applying the more generous $200,000 cap, *plus* any additional compensation received after 1993, but applying the new $150,000 cap. Under either prong of Option Three, then, post-1993 compensation is indisputably "taken into account," and Option Three would, of course, result in a more generous benefit every time.

[6] AAI also argues that Hebert's claims are barred by the applicable statutes of limitations or, in the alternative, by the doctrine of laches.

[7] Specifically, that section provides for suit by a "participant or beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Herbert also raises two ERISA statutory violations in Counts I and II under 29 U.S.C. §§ 1054(g) and (h) and § 402(b)(3) of ERISA, codified at 29 U.S.C. § 1102(b)(3).

3

and the administrator acts reasonably within the scope of that discretion, courts defer to the administrator's interpretation.  *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005)(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989)).  In the Plan here, the administrators are granted significant discretion.[8]  In those circumstances, a court will not disturb an administrator's decision as long as it is reasonable and will not overturn the decision unless it constitutes an abuse of discretion.  *See Firestone*, 489 U.S. at 111, 144-15; *Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000)(discussing factors court may apply to assess reasonableness).  A *de novo* review is appropriate only if the Plan does not give such discretion to the administrator. *Adelson v. GTE Corp.*, 790 F.Supp. 1265, 1269 (D.Md. 1992).

Despite Hebert's citation to Sec. 4.5 in his Complaint, the relevant provision of the Plan, as Hebert concedes in his Response, is Article II, 2.1(n), which provides

> In addition to other applicable limitations which may be set forth in the Plan and notwithstanding any other contrary provision of the Plan, Compensation taken into account under the Plan shall not exceed $200,000 for Plan years prior to 1994 or $150,000 for Plan Years after 1993, adjusted for changes in the cost of living as provided in Section 415(d) of the Code for the purpose of calculating a Plan Participant's Accrued Benefit.

That provision is consistent with the statutory requirements of the Internal Revenue Code and sets

---

[8] Article XII, 12.1 of the Plan specifically sets out the authority of the Plan administrators and grants them broad authority to "resolve and determine all disputes or questions arising under the Plan, including the power to determine the rights of...Beneficiaries, and their respective benefits, and to remedy any ambiguities, inconsistencies and omission;" and to "implement the Plan in accordance with its terms and the rules and regulations adopted [under the Plan]." (*See* Def's Motion to Dismiss, Exhibit 1, "the Plan")

limitations, not guarantees.  The IRS, in Revenue Procedure 94-13 ("RP 94-13") gave Plan administrators three options by which to calculate pension benefits that would not exceed statutory requirements as applied to employees, such as Hebert, who retired in 1994 or later but whose compensation exceeded $150,000 annually prior to 1994.  Choosing Option 1, AAI then took Hebert's compensation in 1994 into account by calculating under Option 1 both the benefit if the 1994 compensation were considered at the lower compensation limit and the benefit if only the pre-1994 compensation was considered.  Because the pre-1994 calculation was higher, that benefit was provided to Hebert.

While it appears that choosing Option 3 would have resulted in a somewhat higher benefit to Hebert, it also appears that Option 3 "involves the most complicated calculations of the three options" and takes the longest time to phase out. (*See* Plf's Response in Opposition, Page 3-4; Exhibit 4, "A&A Correspondence")  Moreover, considering the *Booth* factors, it is clear that the administrators' decision here was reasonable. *See Booth*, 201 F.3d at 342-43.  As previously discussed, Option 1 is consistent with the language of the Plan, and its selection, while slightly less generous than Option 3, is in no way contrary to the goals of the Plan.  *See id*.  Additionally, judging from the materials submitted here and from the engagement of A&A Consulting Group to better assess the options, the decision-making process and materials considered were adequate, and appear to sufficiently support the decision reached.  *See id*.  There is also nothing to suggest that selecting Option 1 was inconsistent with other provisions or earlier interpretations of the Plan. *See id*.  Nor are there any allegations or evidence that the administrators had any conflicts of interest or ulterior motives. *See id*.  The decision was reasoned and principled.  Nothing in the Plan required the administrator to select Option 3, and selection of Option 1 was well within the

5

administrators' discretion.  Accordingly, the defendant is entitled to summary judgment.[9]

*The ERISA Claims - Counts II and III*

Hebert also raises two ERISA statutory violations in Counts II and III under 29 U.S.C. §§ 1054(g) and (h) and § 402(b)(3) of ERISA, codified at 29 U.S.C. § 1102(b)(3).  These provisions, respectively, restrict the ability of the Plan to reduce accrued benefits by amendment, require notice to Plan participants when amendments to the Plan will cause their future accrual of benefits to be reduced, and require that all plans provide a procedure for amending the Plan, and for

---

[9] The court notes that even if Hebert had a valid claim, it would be limited due to the statute of limitations. Hebert brings Count I under the civil enforcement provision of ERISA, 29 U.S.C. § 1132. It is well settled, and neither party contests, that Maryland's three-year statute of limitations applies to such a claim. *See Cecil v. AAA Mid-Atlantic, Inc.*, 118 F.Supp.2d 659, 667 (D.Md. 2000)(citing *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992), and *Dameron v. Sinai Hospital of Baltimore*, 815 F.2d 975, 981 (4th Cir.1987)).  Ordinarily, "[a]n ERISA cause of action does not accrue until a claim of benefits has been made and formally denied." *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir.1989) (citations omitted).  In some circumstances, however, the Fourth Circuit applies "the alternative approach of determining the time at which some event other than a denial of a claim should have alerted [the claimant] to his entitlement to the benefits he did not receive." *Cotter v. Eastern Conf. of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir.1990); *see also Dameron*, 815 F.2d at 982, n. 7.  The alternative approach, focusing as it does on the point at which the claimant in fact knew or reasonably should have known of the wrong, is the appropriate standard here. Whether or not he considered it significant at the time, as far back as December of 1994, upon receipt of his initial pension check, Hebert was aware that the monthly benefit was lower than he thought it was supposed to be. (*See* Plf's Response in Opposition, Page 2-3; Exhibit 1, 1994 Computation).  Accordingly, Hebert's claim accrued in 1994.  That conclusion, however, does not end the analysis: each time the defendant miscalculated or mismanaged the benefit (if it did so), it breached provisions of ERISA.  *See Dameron*, 815 F.2d at 982; *Cecil*, 118 F.Supp.2d at 667-68.  Thus the statute of limitations did not begin to run for claims based on each benefit check until that check was issued. *See Dameron*, 815 F.2d at 982 ("Sinai's violation of the vesting provisions of this plan, like an analogous breach of contract action, constituted a series of successive breaches of the nonforfeiture provisions of ERISA."). The result was that the plaintiffs' claims in those actions were limited to claims for benefits which were denied within three years prior to commencement of suit. *See id.*; *Cecil*, 118 F.Supp.2d at 668.  The same reasoning would apply here.  Even if valid, Hebert's claims, therefore, would have been limited to claims for benefits which he was denied within three years of commencement of this suit.

identifying the persons who have authority to amend the Plan. With respect to 29 U.S.C. §§ 1054(g) and (h), Hebert's complaint focuses exclusively on AAI's failure to send written notice to all Plan participants of the possible reduction in benefits resulting from the use of RP 94-13's Option One.[10] With respect to the 29 U.S.C. § 1102(b)(3) claim, Hebert appears to contend that AAI violated the amendment provisions of its own Plan under Article XIII, Section 13.1, which require, *inter alia*, amendments or modifications to be formally adopted by its Board of Directors.

As with Hebert's claim under Count I discussed above, *see supra* note 9, Maryland's three-year statute of limitations applies to the 29 U.S.C. §§ 1054(g) and (h) claims. *See Cecil*, 118 F.Supp.2d at 666 (construing plaintiff's claim as one for civil enforcement under § 1132 where claims do not allege a breach of fiduciary duty); *see also Campanella v. Mason Tender's Dist. Council Pension Plan*, 299 F.Supp.2d. 274, 280 (S.D.N.Y. 2004)(explaining that ERISA's own statute of limitations provisions under 29 U.S.C. § 1113 do not apply to claims brought under § 1132 for alleged violations of 29 U.S.C. § 1054). Also like Hebert's § 1132 claim discussed above, these additional claims accrued in 1994, upon receipt of his first pension check. Not only was receiving the lower than estimated benefit an "event other than a denial of a claim that should have alerted" Hebert to changes in the calculation of his benefit for which he did not receive notice, *see Cotter*, 898 F.2d at 429, it appears that Hebert was aware, in 1994, of the specific calculation formula and the then recent changes to the compensation caps that were affecting AAI's calculations. (*See* Plf's Response to Mot. to Dismiss at Page 3)(suggesting that, in 1994, he

---

[10] Later in his opposition to summary judgment, Hebert also appears to challenge generally AAI's failure to formally amend the Plan to indicate that RP 93-14's Option One was being utilized.

suspected the discrepancy in his first pension check to be the result of a misapplication of the IRS caps on countable compensation).

These violations occurred and these claims accrued, if at all, when AAI modified its formula and failed to properly amend or give notice in 1994.[11] Unlike Hebert's § 1132 claims would be if they were valid, these claims under Count II are not partially "saved" from the statute of limitations by the successive breaches created by the continuous issuance of benefit checks. S*ee supra* note 9; *compare Cecil*, 118 F.Supp.2d at 667-68.[12] These claims, therefore, are barred by the statute of limitations and AAI's motion will be granted as to Count II.

The 29 U.S.C. § 1102(b)(3) claim under Count III, in which Hebert appears to contend that AAI violated the amendment provisions of its own Plan under Article XIII, Section 13.1, may actually be governed by the ERISA statute of limitations provisions set forth in 29 U.S.C. § 1113.[13] The court need not resolve this particular statute of limitations issue because this claim

---

[11] It should be noted, however, that had Hebert been completely unaware of any changes to or errors in the calculation of his benefits, these claims might not have accrued until a claim for additional benefits was made and denied, *see Rodriguez*, 872 F.2d at 72, or when Hebert inquired about the correctness of the benefits he received. *See Kiefer v. Ceridian Corp.*, 976 F.Supp. 829, 843 (D.Minn. 1997)(citing *Rodriguez*, 872 F.2d at 72); *see also Romero v. The Allstate Corp.*, 404 F.3d 212, 223 (3rd Cir 2005).

[12] The failure to give notice and properly amend are not of the same repeating or continuous nature as the ongoing issuance of erroneously calculated pension checks. The reasoning of *Singer Co. v. Baltimore Gas and Elec. Co.*, dealing with a contract that provided for continuing performance over a period of time and looking to "successive breaches," is simply not applicable to the violations alleged in Count II. *Compare Cecil*, 118 F.Supp.2d at 668 (relying on *Singer Co.,* 558 A.2d at 426).

[13] 29 U.S.C. § 1113 states as follows: No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of- (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or

would be barred by even the most generous of the available statutes of limitations. Moreover, the court does not interpret Article XIII, Section 13.1 of the Plan to require amendment of the Plan in this situation. Hebert's separate claim for a breach of fiduciary duty, therefore, fails, and the defendant's motion will be granted as to Count III.

A separate order follows.

  July 13, 2006  
Date

            /s/          
Catherine C. Blake  
United States District Judge

---

violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.